UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
JAIME JARA PESANTEZ, et al.,                            :
                                                        :
                                    Plaintiffs,         :    **MEMORANDUM**
                                                        :    **<u>DECISION & ORDER</u>**
                         - against -                    :
                                                        :    15 Civ. 1155 (BMC)
JEH JOHNSON, Secretary, Department of                   :
Homeland Security, et al.,                              :
                                                        :
                                    Defendants.         :
                                                        :
------------------------------------------------------- X

**COGAN,** District Judge.

The complaint in this action, brought by thirty-four individual plaintiffs, alleges that their applications for asylum pursuant to the Immigration and Nationality Act ("INA") have been improperly delayed, and seeks an order pursuant to the Mandamus Act, 28 U.S.C. § 1361, or the Administrative Procedures Act, 5 U.S.C. §§ 555(b) and 706(1) ("APA"), compelling defendants to expedite their adjudication. In accordance with my direction at the initial status conference in this case and at plaintiffs' nomination, plaintiff Maria Rocio Angamarca Maurizaca ("plaintiff") moves for judgment on her individual claims pursuant to Fed. R. Civ. P. 12(c), and defendants move to dismiss her claims. For the reasons that follow, plaintiff's motion is denied, and defendants' motion is granted.

## BACKGROUND

With certain exceptions not applicable here, the INA permits any alien "who is physically present in the United States . . . irrespective of such alien's status" to apply for asylum. 8 U.S.C. § 1158(a)(1). The statute sets forth certain "Asylum Procedures" at <u>id.</u> § 1158(d). Among other things, that provision directs the Government to commence a prospective asylee's initial

interview within 45 days after her application is filed, and to complete the administrative adjudication of her asylum application within 180 days. Id. §§ 1158(d)(5)(A)(i); 1158(d)(5)(A)(iii). Section 1158(d)(7), however, provides that "[n]othing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."

Plaintiff is a native and citizen of Ecuador, residing in Corona, New York. She arrived in the United States in 2002 and filed an application for asylum on July 21, 2014. Defendants issued her an employment authorization document on February 27, 2015. By letter dated April 20, 2015 (after this case was filed), plaintiff was notified that she had been scheduled for an interview on her application on April 4, 2016.[1] Defendants represent through counsel that they anticipate completing the adjudication of her application within two weeks thereafter.

## DISCUSSION

Defendants' motion for judgment on the pleadings pursuant to Rule 12(c), seeking dismissal of plaintiff's claims, is governed by the familiar standard of review applicable to a motion under Rule 12(b)(6). See Johnson v. Rowley, 569 F.3d 40 (2d Cir. 2009).[2] To survive defendants' motion, plaintiff's claims must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 44 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)) (internal quotation marks omitted). Judgment on the pleadings for a plaintiff who seeks affirmative injunctive relief is appropriate when "all material allegations of fact are admitted . . . and only questions of law remain to be decided by the district court," Gioconda Law Grp. PLLC v. Kenzie, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013) (quotation omitted), and those legal questions can be decided in her favor.

---

[1] In their motion, defendants incorrectly refer to her interview date as April 14, 2016.

[2] I decline as unnecessary defendants' invitation to convert their motion to one for summary judgment.

### A.    The Mandamus Act

Plaintiff articulates her right to relief as arising under the Mandamus Act, 28 U.S.C. §1361.  The strict requirements for relief under that statute are well established.  They are:  "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."  Anderson v. Bowen, 881 F.2d 1 (2d Cir. 1989) (internal quotation omitted).

Plaintiff has cited no authority in support of the proposition that she is entitled to mandamus to directly compel compliance with the deadlines imposed by § 1158(d)(5)(A).  It is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action.  This limitation appears on the face of the Mandamus Act, which gives me the power to "compel an officer or employee of the United States or any agency thereof to perform a duty owed *to the plaintiff*."  28 U.S.C. §1361 (emphasis added); see also Gjeluci v. Chertoff, No. 05-cv-72451, 2005 WL 1801989, at *1 (E.D. Mich. July 27, 2005) (plaintiff failed to show "clear nondiscretionary duty" under the same subsection of the INA relevant here, as would be required by the Mandamus Act, because § 1158(d)(7) "expressly precludes" such a finding).

The Second Circuit has had little or no opportunity to consider this issue.  However, the proposition upon which I rely is amply supported elsewhere.  In Hernandez-Avalos v. I.N.S., 50 F.3d 842 (10th Cir. 1995), the plaintiff, an incarcerated alien, sought mandamus compelling the INS to expedite his deportation in accordance with a substantive provision of the INA providing that "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceedings as expeditiously as possible after the date of conviction."  Id. at 843-44 (quoting 8 U.S.C. § 1252(i)).

The Court noted that a later-enacted statute, in language identical to that of the provision at issue in this case, provided that § 1252(i) did not give rise to a private right of action.  Id. at 844 (quoting Pub. L. No. 103-416, 108 Stat. 4305).  The Court then held that the language of the no-private-right provision "makes clear that Congress intended that no one be able to bring suit to enforce § 1252(i) . . . either directly under the statute or by way of the Mandamus Act."  Id.

The Hernandez-Avalos Court went on to explain, in *dicta*, that even if there had been no provision expressly denying a private right, there would be no entitlement to mandamus under § 1252(i) because the plaintiff would lack standing.  Id. at 844-848; accord Kaur v. Connery, No. 92-cv-7437, 1993 WL 127213, at *1-2 (S.D.N.Y. Apr. 20, 1993) (mandamus under §1361 was unavailable even prior to enactment of no-private-right provision because "Congress intended [that provision] as an instruction to the Attorney General not to procrastinate unnecessarily at the expense of federal and state resources; not as a mechanism for incarcerated aliens to utilize for their personal benefit").

Even if mandamus pursuant to § 1361 were theoretically available to compel compliance with § 1158(d), it would be within my discretion to decline to award it here.  Plaintiff herself expressly characterizes the relief that she is seeking as a "request[] that the court exercise its discretion" to grant the writ.  The "exercise of the power of mandamus is a matter committed to the sound discretion of the [trial] court."  Cartier v. Sec'y of State, 506 F.2d 191, 199 (D.C. Cir. 1974); see also Marquez-Ramos v. Reno, 69 F.3d 477, 479 (10th Cir. 1995) (holding that even if the party establishes the mandamus prerequisites, a court has the discretion to decide whether to issue the writ).

I must therefore bear in mind that "when exercising its equitable powers . . . the court is bound to give serious weight to the obviously disruptive effect which the grant of . . . relief . . .

[i]s likely to have on the administrative process." <u>Jimmo v. Sebelius</u>, No. 11-cv-17, 2011 WL 5104355, at *13 (D. Vt. Oct. 25, 2011). For reasons that are discussed in greater detail in the next section, the facts of this case do not counsel in favor of a remedy that would, if it did anything, move plaintiff's application to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication. An award of relief that is discretionary therefore seems inappropriate in this case.

B.  *The Administrative Procedure Act*

The conclusion that no relief is available to plaintiff via the Mandamus Act does not end the inquiry, because I must also consider her allegations of agency inaction under the Administrative Procedure Act,[3] which provides individuals with a cause of action when agency adjudication has been unreasonably delayed. Specifically, the APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. §555(b). It further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." <u>Id.</u> § 706(1). Such a claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64, 124 S. Ct. 2373 (2004) (emphasis in original), but defendants do not appear to dispute that the adjudication of plaintiff's asylum application is such an action.

---

[3] The complaint in this case expressly invokes the Mandamus Act, and plaintiff's briefing on the instant motions substantially focuses on the rules governing § 1361. However, the complaint does also raise the APA, and both sides seem to contemplate a resolution that turns on whether defendants' conduct was reasonable, which is the standard under the APA.

Courts have in fact applied the APA's reasonableness requirement via the Mandamus Act, <u>e.g.</u>, <u>Li v. Chertoff</u>, No. 07-cv-3836, 2007 WL 4326784 (E.D.N.Y. Dec. 7, 2007), but I believe that to do so adds an unnecessary doctrinal layer, because § 706(1) unquestionably provides a stand-alone cause of action. <u>See</u> <u>Kim v. Ashcroft</u>, 340 F. Supp. 2d 384 (S.D.N.Y. 2004). If anything, to apply § 555(b) via the Mandamus Act would place a higher bar on plaintiff. <u>See Li</u>, 2007 WL 4326784, at *5 (calling mandamus a "drastic and extraordinary remedy reserved for really extraordinary causes" (internal quotation marks omitted)). I therefore construe the APA claim in this case as arising directly under § 706(1), *i.e.*, in the manner most favorable to plaintiff.

To determine whether an agency adjudication delay is reasonable under the APA, courts regularly apply the six factors set forth in Telecomm'ns Research and Action Ctr. v. FCC, 750 F.2d 70 (D.C. Cir. 1984) (the "TRAC factors").  They are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable . . . [it] may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) . . . the effect of expediting delayed action on agency activities of a higher or competing priority; (5) . . . the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Families for Freedom v. Napolitano, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009) (citing id. at 80).

Also under the APA, applying the "competing priority" factor, the D.C. Circuit has held that it is appropriate to "refuse[] to grant relief, even though all the other factors considered in TRAC favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (quoting In re Barr Labs., Inc., 930 F.2d 72 (D.C. Cir. 1991)) (internal quotation marks omitted).  The Court in Mashpee noted that there was "no evidence the agency had treated the petitioner differently from anyone else, or that officials not working on [the petitioner]'s matters were just twiddling their thumbs." Id. at 1100-01 (same).  The Court approvingly noted the District Court's recognition of this concern in finding that "[n]ot only must [the agency] juggle competing duties . . . but the injury claimed by [the plaintiff] is applicable to all groups petitioning for" expedited adjudication.  Id. at 1101 (quoting 180 F. Supp. 2d 130).

The Court's ultimate conclusion was that in ordering an expedited adjudication, "[t]he district court erred by holding the decision of the Secretary had been unreasonably delayed

without first considering . . . the effect of granting relief upon other equally-deserving petitioners for recognition." Id. at 1102. It seems to me that Mashpee is – although it arose in a different administrative setting – closely analogous with respect to the facts material to this issue, and stands quite clearly for the proposition that a showing (or in this case an undisputed allegation) that she has been treated differently than similarly situated asylees is, if not a prerequisite, at least an important factor in determining whether a delay was unreasonable.

In this regard, I agree with Judge Glasser's application of Mashpee in an immigration case presenting issues similar to this one, also interpreting the APA's reasonableness requirement. See Li, 2007 WL 4326784. He held, correctly in my view, that "the Court must consider . . . whether compelling the agency to focus its attention on one case would force it to shift resources away from equally deserving applicants." Id. at *6; see also Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (declining to find a five-year immigration adjudication delay unreasonable in part because the plaintiff had not "provided any compelling rationale for why he should not be made to wait his turn for adjudication").[4]

Plaintiff herself contends that she was "only provided with an interview date at all because she filed the instant action, causing counsel for Defendants to ask his clients to finally schedule her for an interview." It is ironic, therefore, that she seeks relief that would further incentivize defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court. See Dmitrenko v. Chertoff, No. 07-cv-82, 2007 WL 1303009, at *1 (E.D. Va. Apr. 30, 2007) (noting, as a public policy consideration, that compelling adjudication of an adjustment petition "would set a dangerous precedent, sending a

---

[4] It is also worth noting that in Li, Judge Glasser found as a matter of law that a 16-month delay was not unreasonable because it was "not remotely in the range that has been held by other courts to be 'unreasonable' for purposes of the APA." Id.

clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer").

I do not hold that the APA is inapplicable to the instant case, nor that it would be possible to so delay adjudication as to create an "unreasonable" delay in violation of that statute. Nor does my resolution of the instant motions require the conclusion that USCIS enjoys "unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely," as described in Kim, 340 F. Supp. 2d at 393, upon which plaintiff relies. The facts of Kim are distinguishable at least because there was no indication in that case that the plaintiff, who was an applicant for an adjustment of status, was already one step toward an adjudication with a promise of action by a date certain, as plaintiff here is.[5] Cf. also American Acad. of Religion v. Chertoff, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) (reading applicable regulations to "make clear that allowing a visa application to stagnate undecided for an indefinite period of time, as the Government appears to be doing in this case, is not a permissible option").

American Academy of Religion is likewise distinguishable in that it involves the kind of disparate treatment that might suggest a right to relief. In that case, which challenged not only an adjudication delay but the denial of a visa application, the court found the adjudication delay unreasonable in part because the record revealed that the Department of Homeland Security was "actively monitoring" the applicant as a result of his political views. Id. at 421 (also considering the fact that nine month delay, without any action, was inconsistent with agency's representation that "most nonimmigrant visas . . . are processed within 2 days of application").

---

[5] In addition, Kim was decided before the Supreme Court refined the standard of notice pleading in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and Judge Scheindlin denied the defendants' motion to dismiss principally because "[n]either party ha[d] offered an explanation for the delay and as such, it cannot be said that [the plaintiff] will be unable to prove any set of facts, consistent with his allegations," that would suggest that the defendants' delay was unreasonable. Kim, 340 F. Supp. 2d at 393-94. Under Twombly, if there are facts in this case that are not before me and would change the outcome, it was plaintiff's obligation to raise them, so that her allegations would "plausibly suggest" that the delay was unreasonable. Iqbal, 556 U.S. at 681, 129 S. Ct. 1937.

In short, this decision should not be read as holding that relief in this Court would never be available to an asylee facing a delayed adjudication, nor that disparate treatment or banishment to "limbo" are prerequisites to a finding of unreasonable delay under the APA. Nevertheless, if there is a case in which it would be proper to order one applicant to the front of the line without such a showing, and plaintiff has alleged no such facts, I do not see what it is about this case would suggest that this is it.

Two other factors that I may consider under <u>TRAC</u> warrant brief mention. First, plaintiff correctly argues that although she does not seek strict adherence to the deadlines set forth in § 1158(d) (which would be impossible at this point anyway), and that although "the passing of the one hundred and eightieth day does not necessarily create a legal right to relief in and of itself," it is still true that "the statutory guidelines created by Congress . . . are instructive . . . ."

And so they are, in the absence of any other consideration. But it seems to me that the precatory or hortatory deadlines set forth in § 1158(d) cannot be more important than the impetus to prevent the instant lawsuit from elevating plaintiff's claims above those of others similarly situated, at least in the absence of any good reason to do so. <u>See</u> <u>Mashpee</u>, 336 F.3d at 1100 (denying relief in light of competing priorities "even though all the other factors considered in <u>TRAC</u> favor[] it").

Second, I emphasize that I have not overlooked "the nature and extent of the interests prejudiced by delay," including its effect on "human health and welfare." Plaintiff herself alleges that she has been working and living in the United States for 11 years, and has a work authorization. As defendants point out, although her situation is not ideal, she is in no immediate danger of deportation or physical or economic harm. Although plaintiff is a prospective asylee, and I have no doubt that the Government's ability to process her application in keeping with its

own standards has worked her a hardship, her own allegations do not portray her as someone whose health and welfare are in imminent danger.  As a result, it does not seem to me that by moving her to the front of the line, any broader mitigation of the harm done by the backlog of asylum adjudications in this country will be accomplished.

I acknowledge discomfort in reaching this holding.  It seems clear that the process for resolving plaintiff's status is in tatters, and the least that should be done is to let applicants know their status on the road to citizenship or its rejection.  But the remedy for inept legislative and executive action cannot be a lawsuit.  To take judicial action with that intent would be to intrude too closely into the political prerogatives of the elected branches to resolve the undisputed backlog in asylum processing.  It can be inferred from the facts at bar that Congress has implemented an aspirational administrative requirement for expeditious adjudication of applications that the Executive branch has shown itself unable to or disinterested in carrying out.  That failure has worked a hardship on plaintiff and those similarly situated, but it is not a hardship that properly finds resolution in this Court.

Indeed, although the analogy to the Supreme Court's enforcement-discretion cases is imperfect, the policy considerations that they raise are instructive.  Judicial intervention in this case would necessarily involve an intrusion into the defendants' allocation of adjudicatory resources on the whole, and that is something that this Court is "institutionally ill-equipped to do."  Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell, 729 F.3d 1025, 1038 (9th Cir. 2013) (citing Lincoln v. Vigil, 508 U.S. 182, 193, 113 S. Ct. 2024 (1993)).  Absent some further showing that plaintiff has suffered disparate treatment at the hands of the agency or has been relegated to administrative "limbo," I cannot find that defendants' treatment of her application has been unreasonable within the meaning of the APA.

## CONCLUSION

Defendants' [20] motion for judgment on the pleadings is granted, and plaintiffs' [21] motion is denied.  The Court will set a Status Conference concerning the resolution of the remaining plaintiffs' claims by separate order.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      September 16, 2015